724 F.Supp. 573 (1989)
UNITED STATES of America, Plaintiff,
v.
Martin J. DEMPSEY, et al., Defendants.
No. 89 CR 666.
United States District Court, N.D. Illinois, E.D.
October 13, 1989.
*574 Thomas M. Durkin and Mark Rotert, Asst. U.S. Attys., Chicago, Ill., for plaintiff.
Robert Stephenson and Ann Tighe, Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Chicago, Ill., for defendants Dempsey and Ryan.
James Streicker and George Cotsirilos, Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Chicago, Ill., for defendants Anixter and Nowak.
Donald Shine, Nisen & Elliott, Chicago, Ill., for defendant Bergstrom.
George Collins, Collins & Bertelle, Chicago, Ill., for defendant Ashman.
Nicholas F. Maniscalco, Chicago, Ill., for defendant Barcal.
Matthias A. Lydon, Lydon & Griffin, Chicago, Ill., for defendants Cox and LaCrosse.
Miriam Miquelon, Chicago, Ill., for defendant Eggum.
William J. Martin, William J. Martin, Ltd., Oak Park, Ill., for defendant Kenney.
James Montana, Chicago, Ill., for defendant Mittlestadt.
*575 Gregory Jones, Grippo & Elden, Chicago, Ill., for defendant Patten.
Pat Driscoll, Chicago, Ill., for defendant Skrodzki.
Thomas McQueen, Jenner & Block, Chicago, Ill., for defendant Fetchenhier.
David Schippers, Chicago, Ill., for defendant Gillen.
Royal Martin, Silets & Martin, Chicago, Ill., for defendant Schneider.
Michael Monico, Monico & Pavich, Chicago, Ill., for defendant Vercillo.
Carole Brook, Federal Defender Program, Chicago, Ill., for defendant Weiser.

MEMORANDUM OPINION AND ORDER
HART, District Judge.
On August 2, 1989, a Grand Jury returned a 534-count indictment against nineteen defendants, eighteen of whom were traders in the soybean futures pit of the Chicago Board of Trade ("CBOT"). The indictment charges that between December, 1986 and August, 1989, certain defendants participated in a pattern of racketeering aimed at defrauding their customers through illegal trading practices. Four of the nineteen defendants have engaged four of the members of a single law firm to represent them. The Government has moved for an inquiry into the firm's multiple representation pursuant to Fed.R. Crim.P. 44(c). The matter is before the court on the Government's motion, each defendant's declaration and the briefs of the parties. The issue presented is whether the law firm of Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Ltd. ("the Firm") should be disqualified from representing any of the defendants in this case.
The indictment in this case follows an undercover investigation of alleged illegal trading activity at the CBOT. For a period of approximately two years, a special agent for the Federal Bureau of Investigation posed as a trader in the soybean futures pit. He tape-recorded his transactions with other traders and allegedly documented the illegal activity of defendants. In January of 1989, the undercover FBI agent, an assistant U.S. Attorney, and other FBI agents confronted a number of the traders with evidence gathered from the investigation. On January 20, 1989, Government agents interviewed Martin Dempsey at his home regarding his allegedly illegal trading activity. According to the agents' written report of the interview, which has been furnished to the parties and the court, Dempsey explained how certain illegal trades were conducted and admitted to his participation in some of those practices. The report also states that Dempsey made statements involving and inculpating others, including James Nowak and Scott Anixter. On the same day, the assistant U.S. Attorney and FBI agents also interviewed James Nowak at his home. According to the agents' written report of that interview, Nowak admitted to his participation in certain illegal trading activity and made statements involving and inculpating others, including Dempsey and Ryan.
At the time of the interviews or soon thereafter, defendants engaged counsel. Dempsey was the first of the four defendants to retain the Firm to represent him.[1] The next day, Nowak also hired the Firm, as did Ryan and Anixter three days later.[2] Thereafter, the Grand Jury returned the indictment charging the traders, including Dempsey, Nowak, Ryan and Anixter. Each of the four defendants has entered a *576 plea of not guilty to the charges against him.
The Government has responded to defendants' choice of counsel by filing a Motion for Inquiry pursuant to Fed.R. Crim.P. 44(c).[3] The Government contends that the Firm's decision to represent each of the four defendants has created an actual conflict of interest that will deny defendants their Sixth Amendment right to effective assistance of counsel. In support of this contention, the Government notes that each of the four defendants has been made an offer of more lenient treatment in exchange for his cooperation in the trials of the other defendants. According to the Government, "[e]ach defendant is presented with a unique, and finite, opportunity to reduce his own exposure to criminal and monetary sanctions arising from his trading activity; no defendant can avail himself of that opportunity without acting in a manner directly contrary to the interests of the other three men also represented by the firm." Government's Brief in Support of It's Motion for an Inquiry Pursuant to Rule 44(c) at 5. The Government contends that the Firm's conflict of interest will not diminish as the case proceeds to trial.
Each of the defendants has responded by submitting a comprehensive affidavit outlining his understanding of the "potential conflicts" that have arisen and that might arise at each stage of the case because of the Firm's representation of the other defendants. Each defendant also seeks to completely waive "any possible conflicts of interest that the firm might have." Defendants claim that in light of their knowing and intelligent waiver of any such conflicts, their Sixth Amendment right to retain counsel of their choice should be respected by the court.
When codefendants' choice of counsel in a criminal prosecution results in a case of multiple representation, the court must promptly address the propriety of the representation. Fed.R.Crim.P. 44(c). The trial court must fulfill this obligation notwithstanding the fact that it faces, as the Supreme Court aptly observed, "the prospects of being `whip-sawed' by assertions of error no matter which way [it] rule[s]." United States v. Wheat, 486 U.S. 153, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140 (1988) (quoting United States v. Wheat, 813 F.2d 1399 (9th Cir.1987)). "[A] possible conflict of interest inheres in almost every instance of [such] multiple representation." Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). When potential conflicts threaten each defendant's right to the undivided loyalty and independent judgment of counsel, it precipitates an unavoidable tension between the Sixth Amendment guarantee of effective assistance of counsel, see Cuyler, 446 U.S. at 344, 100 S.Ct. at 1716, and defendants' qualified right to be represented by counsel of their choice. Wheat, 108 S.Ct. at 1697. In United States v. Wheat, the Supreme Court recently sought to chart the proper course between the Scylla and Charydbis of these conflicting rights.
Although the Sixth Amendment comprehends the qualified right to counsel of one's choice, the Court in Wheat emphasized that "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer he prefers." Id. 108 S.Ct. at 1697. Accordingly, a trial court must recognize a presumption in favor of defendants' choice of counsel; however, that presumption may be overcome upon a showing that defendants' choice has created an "actual conflict" or "serious potential" for a conflict of interest on the part of defense counsel. Id. 108 S.Ct. at *577 1700. See also United States v. Colonia, 870 F.2d 1319, 1327 (7th Cir.1989).
Codefendants, after being fully apprised of the actual or potential conflicts, may still want to be represented by their chosen counsel. In appropriate cases, a waiver by each of the defendants as to his or her right to conflict-free representation will generally effectuate this desire. Holloway v. Arkansas, 435 U.S. 475, 483, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). However, in Wheat the Supreme Court recognized that a defendant's waiver, even if made knowingly and intelligently, will not necessarily cure the conflicts presented in every multiple representation case.[4] Waivers must be reviewed in light of the particular facts before the court. "[W]here a [trial] court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." Wheat, 108 S.Ct. at 1698. See, e.g., Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942) (a trial court should not readily accept a hardpressed defendant's waiver of fundamental constitutional rights). Thus, in the context of a multiple representation case, a trial court should limit the exercise of its supervisory authority to override defendants' proffered waivers to those instances in which defense counsels' simultaneous conflicts are actual, or there is a serious potential for such conflicts and they threaten to undermine the essential guarantee of the Sixth Amendment because of the nature of the conflicts involved. Under such circumstances, the trial court's authority to deny defendants' waivers is augmented by its independent or institutional obligation to conduct a criminal trial that will lead to a "just result," that appears "fair to all who observe [it]," and that conforms to the ethical standards of the legal profession. Wheat, 108 S.Ct. at 1697-98. See also Colonia, 870 F.2d at 1326-27.
Although it is difficult for a trial court to accurately predict the course of a complex criminal case such as the present one, Wheat, 108 S.Ct. at 1699, the extant record here reveals that the Firm is presently laboring under actual and serious potential conflicts of interest that are likely to become more complicated as the case proceeds to trial. The conflicts arise from the nature of the charges against the four defendants and the evidence which is likely to be central to the Government's case.
There is a significant difference in the charges against each of the defendants. Defendants Nowak and Dempsey are charged with participation in a conspiracy to commit a pattern of racketeering, as well as substantive violations of RICO, 18 U.S.C. § 1962. Both defendants are also charged with numerous counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, and violations of the Commodities Exchange Act, 7 U.S.C. § 6, et seq. Nowak is charged in a total of 237 counts in violation of eleven different statutes, and Dempsey is charged in a total of 121 counts in violation of nine different statutes. In contrast to the more extensive charges against Nowak and Dempsey, Ryan is charged in only 13 counts, eleven of which relate to four specific transactions. *578 He is not charged with violating RICO or with participation in the conspiracy to commit a pattern of racketeering. Likewise, Anixter is charged in only 13 counts, eight of which relate to three specific transactions. At present, Anixter is named as an unindicted coconspirator in the overarching racketeering count.
Additionally, numerous counts allege that some of the defendants worked together with others in conducting some of the fraudulent practices at issue. In separate counts, Nowak is alleged to have committed a number of fraudulent trades and one prearranged accommodation trade, all of which Dempsey is alleged to have aided and abetted. In turn, Dempsey is charged in two counts with conducting unauthorized trades in which Nowak is alleged to have aided and abetted. Nowak and Dempsey are also charged with participating in four separate counts of mail fraud, either as a pair or with a third trader. Furthermore, Nowak is charged with conducting a fraudulent trade in which Ryan is alleged to have aided and abetted, and both are charged with participating in one count of wire fraud. Nowak is also charged with participating with Anixter in conducting a prearranged accommodation trade. Finally, Dempsey is charged in two counts with conducting a fraudulent trade in which Anixter aided and abetted, and both are charged with participation in one count of mail fraud.
The differing extent of the charges against the four defendants and their alleged participation and cooperation in certain practices reveals that their objective, individual interests are potentially at odds and will remain so throughout the trial and at sentencing, if convictions result. These differences, in conjunction with the allegations of participation and cooperation, could force defense counsel to forego certain strategic options that might otherwise be pursued if defendants were separately represented.[5] As one commentator has pointed out:
When one attorney represents multiple defendants, however, plea bargain negotiations are fraught with danger of conflicts of interests. For example, where an attorney represents two clients, one of whom is substantially more culpable than the other, he may forego altogether an attempt to bargain for the less culpable defendant out of a fear that the defendant's cooperation with the prosecution may undermine the defense of his more culpable client.... Recognizing this potential detriment to the interests of the other defendants, the attorney may be inclined to dissuade him from accepting the proffered bargain. But if his advice to one defendant is influenced by concern for other defendants, the lawyer suffers an impairment of loyalty violative of the former's sixth amendment rights.
Geer, Representation of Multiple Criminal Defendants: Conflicts of Interests and the Professional Responsibilities of the Defense Attorney, 62 Minn.L.Rev. 119, 125 (1976). [Hereinafter Geer, Conflicts of Interests].
The defendants respond to this concern about counsel's strategic choices relative to the plea negotiations by stressing that they are all irreversibly committed to going to trial. Thus, they contend that the Government's attempt to conduct such negotiations with them is of no relevance. Even if a flat rejection of the Government's offer is objectively advisable for each of the defendants, subsequent, more compelling conflicts *579 are unavoidable given the inculpatory statements that will surely be a hotly contested issue in this case. As previously stated, Nowak's alleged inculpatory statements concerning the trading practices of Dempsey and Ryan, and Dempsey's alleged inculpatory statements concerning the trading practices of Nowak and Anixter creates an actual conflict of interest paradox for the Firm.
A related conflict of interest problem arises when one defendant makes a pretrial confession implicating other defendants represented by the same attorney. If the confessing defendant does not testify at trial, his extrajudicial confession will be inadmissible because of the implicated codefendant's sixth amendment right to confront witnesses. See Bruton v. United States, 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968). If the confessing defendant testifies, however, and affirms his prior statement, counsel is not only obliged to cross-examine him fully but also to protect his interests and preserve his confidences. See ABA Code of Professional Responsibility DR 4-101. If the attorney exercises restraint in cross-examination to avoid areas of confidential communication, his cross-examination may be constitutionally defective.
Geer, Conflicts of Interests, 127 n. 30.
Nowak and Dempsey have indicated that they will move to suppress their alleged statements. However, how to proceed at such a hearing raises strategic questions placing the defendants in conflict. How far should the attack be carried? Should any or all defendants implicated by the statements testify? Will any defendant risk creating any subsequent basis for impeachment if the attack fails? Nowak and Dempsey may be properly advised to take the witness stand to rebut, contest or explain the apparent admissions in the statements made to the Government. Advising them to testify, however, may result in the admission of otherwise inadmissible statements by them relating to the conduct of Anixter and Ryan  contrary to the best interests of Anixter and Ryan.[6] Further, if either Nowak and Dempsey testify, the defense of Anixter and Ryan may require an effort to attack the inculpatory statements of Nowak and Dempsey in conflict to the interests of Nowak and Dempsey. The obvious defense problems demonstrate present actual conflicts of interest among the clients of the Firm with respect to how to meet the Government's evidence. The Firm's need to serve four masters when the evidence is or may be inculpatory will cause each defendant to be tried without the benefits of effective assistance of counsel.[7] Moreover, if the motions fail, the conflicts touched upon above will prevent the Firm from fulfilling its obligation to "adequately represent" the best interests of each defendant. Model Code of Professional Responsibility DR 5-105(C) (counsel may represent multiple clients only "if it is obvious that he can adequately represent the interests of each and if each consents to the representation after full disclosure"). See also Model Code of Professional Responsibility EC 5-15; ABA Defense Function Standard 4-3.5(b).
Under the circumstances, an acceptance of the four defendants' waivers of their rights to conflict-free assistance of counsel would contravene this court's independent interest in ensuring that the trial will lead to an objectively measurable "just result," and one that appears fair to all who observe it. Wheat, 108 S.Ct. at 1697-98. Equally importantly, it is doubtful whether the trial would conform to the ethical standards of the profession. Id. 108 S.Ct. at *580 1698. The appropriate measure to be taken under these circumstances is highlighted in the Advisory Committee Notes to Rule 44(c):
[W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free of future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problem implicating the defendant's comprehension of the waiver. Under the circumstances, the court can elect to exercise its supervisory authority over members of the bar to enforce the ethical standard requiring an attorney to decline multiple representation.
Advisory Committee Notes to Fed.Rule Crim.P. 44(c) (quoting United States v. Dolan, 570 F.2d 1177, 1184 (3d Cir.1978). See also United States ex rel. Stewart on behalf of Tineo v. Kelly, 870 F.2d 854, 857-59 (2d Cir.1989); United States v. Flanagan, 679 F.2d 1072, 1076 (3d Cir.1982), rev'd on other grounds, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (where actual conflict is likely to materialize, disqualification of defense counsel and ordering defendants to retain separate counsel are appropriate measures under Fed.R.Crim.P. 44(c)).
The court's pretrial obligations under Fed.R.Crim.P. 44(c) require a consideration of the possible developments in an impending trial. The court is placed in the difficult position of second-guessing the professional judgment of defense counsel and rejecting defendants' exercise of their qualified right to choice of counsel, even in the face of a knowing and intelligent waiver. Nevertheless, the facts in the present case cast substantial doubt upon the prospects that defendants will receive effective assistance of counsel. This court cannot find, as required by Rule 44(c), "that there is good cause to believe no conflict of interest is likely to arise." Additionally, it is questionable whether defense counsel will be able to fulfill their ethical obligations to all of the defendants. Finally, this court's interests in the efficient administration of this complex case, and the overall integrity of the judicial process, justify the disqualification of the attorneys from representing any of the defendants. United States v. Micke, 859 F.2d 473, 480 (7th Cir.1988); United States v. O'Malley, 786 F.2d 786, 789-90 (7th Cir.1986). See also Developments, Conflicts of Interests in the Legal Profession, 94 Harv.L.Rev. 1244, 1470-1503 (1981). Because the court is compelled to disqualify the individual attorneys from representing the four defendants, it would be inappropriate for any attorney of the Firm to continue working on the case. Model Code of Professional Responsibility DR 5-105(D) (no partner or associate of firm may continue employment if a lawyer of the firm is required to decline employment or withdraw). See also LaSalle National Bank v. County of Lake, 703 F.2d 252, 259 (7th Cir.1983).
IT IS THEREFORE ORDERED that the law firm of Cotsirilos, Crowley, Stephenson, Tighe & Streicker is disqualified from representing defendants in this proceeding. Defendants Dempsey, Nowak, Anixter and Ryan are hereby ordered to retain separate counsel within 14 days from the date of this order.
NOTES
[1] According to the Firm's entry in Martindale-Hubbell Law Directory, Vol. III (1989), it is currently composd of four partners and two associates. The Firm is known as able and well respected for its criminal trial and appellate practice.
[2] According to defendants' response to the Government's motion under Rule 44(c), Attorney Ann Tighe is representing Dempsey, James Streicker is representing Nowak, Robert Stephenson is representing Ryan, and George Cotsirilos is representing Anixter. The fact that individual partners of the Firm have filed individual appearances does not affect the obligation of loyalty that each member of the Firm owes to every client of the Firm. See Model Code of Professional Responsibility Canon 5.
[3] Fed.R.Crim.P. 44(c) provides:

Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.
[4] In Wheat the Supreme Court stated that "a waiver by the defendant [may not] necessarily solve the problem" and it noted, without passing judgment on the issue, "the apparent willingness of Courts of Appeals to entertain ineffective assistance claims from defendants who have specifically waived the right to conflict-free counsel." Wheat, 108 S.Ct. at 1698. This court's experience in this area confirms that observation. In United States v. Noble, 754 F.2d 1324 (7th Cir.1985), which was a case of potential conflict of interest (defense counsel was retained to represent an alleged co-participant in the counterfeiting scheme in a case to be brought in California), I accepted defendant's waiver of the potential conflicts only after appointing the Director of the Federal Defender Program as special counsel to advise the defendant concerning his waiver. Notwithstanding the waiver, the defendant later argued on appeal that this court erred by allowing counsel to represent him. Although the waiver was upheld, the case is an example of how the problem of conflict-free representation is not finally resolved by the taking of a waiver. See also United States v. Alamo, 872 F.2d 202 (7th Cir. 1989); United States v. Roth, 860 F.2d 1382 (7th Cir.1988); Bridges v. United States, 794 F.2d 1189 (7th Cir.1986); United States v. Noble, 754 F.2d 1324 (7th Cir.1985); United States ex rel. Tonaldi v. Elrod, 716 F.2d 431 (7th Cir.1983).
[5] The Supreme Court has recognized that counsel's multiple representation will tend to limit the attorney's strategic choices, and that counsel's resulting omissions are difficult to review or measure on appeal.

Joint representation of conflicting interests is suspect for what it tends to prevent the attorney from doing. For example, ... it may well ... preclude ... defense counsel ... from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of one by emphasizing that of another. Examples can be readily multiplied.
Holloway, 435 U.S. at 489-90, 98 S.Ct. at 1181.
[6] A further complication is that Nowak also allegedly inculpates Dempsey and Dempsey allegedly inculpates Nowak, which puts them in conflict with each other as well as with Anixter and Ryan.
[7] The present circumstances suggested by defendants could easily change so that the Firm may be faced with an irrepressible conflict sometime before trial if one of the clients changes his mind about the Government's plea negotiations, or in the middle of the trial if one of the defendants wants to testify. At that point, the Firm will need to consider withdrawing as counsel for each of the defendants and the court would be forced to delay the entire trial to allow the four defendants to retain new counsel. The Firm's multiple representation threatens to raise difficult issues at each stage of this trial.