UNITED STATES of America, Plaintiff,

v.

Robert H. BAILIN, et al., Defendants.

No. 89 CR 668.

United States District Court,
N.D. Illinois, E.D.

Feb. 16, 1990.

See also, —— F.Supp. ——.

Jeffrey B. Steinback, Genson, Steinback,
& Gillespie, Chicago, Ill., for Robert Bailin.

Jerry D. Sparks and Noel Dennis, Chicago, Ill., for Tom Crouch.

Robert M. Stephenson, Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Chicago, Ill., for James Marren.

David J. Stetler, McDermott, Will & Emery, Chicago, Ill., for Joseph O'Malley.

Eugene J. Kelley, Jr., Arnstein & Lehr, Chicago, Ill., for Mike Greenfield.

Steven J. Rosenberg, Rosenberg, Opdycke, Gildea, Hellner & Kelly, Chicago, Ill., for Ray Pace.

William P. Murphy, Murphy, Peters, Davis & O'Brien, Chicago, Ill., for Martin Riley, Jr.

James Meltreger, Onesto, Giglio, Meltreger & Associates, Chicago, Ill., for Michael Sidel.

James Streicker, Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Chicago, Ill., for Mike Smith.

Patrick A. Tuite, Tuite, Mejia & Giachetti, Chicago, Ill., for Gary Wright.

Michael Lorge, Laser, Kolman & Frank, Chicago, Ill., for Aric March.

Nicholas J. Etten, Foran, Wiss & Schultz, Chicago, Ill., for Daniel Parz.

Charles D. Sklarsky, Robert J. Byman, Jenner & Block, Chicago, Ill., for Matt Newberger.

Michael Goggin, Oak Park, Ill., for Thomas M. Braniff.

Thomas P. Sullivan, Jeffrey Coleman, Jenner & Block, Chicago, Ill., for John Baker.

Thomas A. Durkin, Arnstein & Lehr, Chicago, Ill., for Sam Cali.

Richard Manning, Chicago, Ill., for Michael Christ.

Thomas Shanahan, Mansker & Shanahan, Chicago, Ill., for Ken Maslak.

Frank Stachyra, Riverside, Ill., for Donald Callahan.

Michael D. Monico and Barry A. Spevack, Monico, Pavich & Spevack, Chicago, Ill., for Brian Sledz and James Sledz.

Danie Gillogly, Mark Pollack and Lisa Huestis, Asst. U.S. Attys., for U.S.

# MEMORANDUM OPINION AND ORDER

HART, District Judge.

Under Fed.R.Crim.P. Rule 44(c), the court is required to inquire into the propriety of counsel's joint representation of two or more defendants joined for trial. "Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel." Fed.R.Crim.P. Rule 44(c). In three instances, defendants have retained attorneys associated in the practice of law to represent them. Those defendants were ordered to file declarations of their knowledge of the right to separate, conflict-free representation, and to state whether or not they were willing to waive any possible conflicts of interest that might arise from being jointly represented along with a codefendant. The Government was ordered to file a statement of any facts to its knowledge that may bear upon the existence of any such conflicts. The case is presently before the court pursuant to the declarations of the defendants and the Government's consolidated response.

## I. Factual Background

The 400–count indictment in this case names 21 traders in the Japanese Yen pit of the Chicago Mercantile Exchange ("CME") as participants in a conspiracy to conduct their affairs in the pit through a pattern of racketeering aimed at defrauding their customers in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Three of the traders are also alleged to have committed substantive violations of RICO through their illegal trading practices. The predicate offenses for the RICO conspiracy and substantive RICO counts consist of alleged violations of the Commodities Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.,* and violations of the federal statutes prohibiting mail fraud and wire fraud, 18 U.S.C. §§ 1341 and 1343, respectively. The Government is seeking forfeiture of the assets of some of the traders

pursuant to the provisions of RICO. 18 U.S.C. § 1963(a).

Five of the 21 named defendants have pled guilty to the charges against them. Presumably, these defendants will testify at trial as witnesses for the Government. Of the remaining defendants, Michael Smith and James Marren have retained two lawyers from the law firm of Cotsirilos, Crowley, Stephenson, Tighe & Streicker to represent them ("Cotsirilos, Crowley").[1] Defendants Sam Cali and Michael Greenfield have retained two lawyers from the law firm of Arnstein & Lehr to represent them,[2] and defendants John Baker and Matthew Newberger have retained lawyers from the law firm of Jenner & Block.[3] Before the court may accept the waivers of the six defendants, it must review the nature of the charges against them, the extent of their understanding of the conflicts of interest that may arise, and the scope of their waivers of those conflicts.

### 1. Defendants Smith and Marren

Under the present indictment, defendants Michael Smith and James Marren are apparently coequal defendants. Smith is charged in a total of 32 counts while Marren is charged in 30. Both are named as participants in the central RICO conspiracy count. In addition, Smith is charged in 19 counts with violating the CEA, five counts of mail fraud, and seven counts of wire fraud. Marren is charged in 16 counts of violating the CEA, ten counts of mail fraud and three counts of wire fraud. Of these overall charges, Smith and Marren are alleged to have worked together in only one transaction, which is the subject of one count of mail fraud and one count of wire

fraud. The Government is seeking forfeiture from both Smith and Marren. Finally, the Government does not allege that either defendant has made any incriminating statements about the other. Nor is the Government presently pursuing negotiations with either defendant.

In their declarations pursuant to this court's order, both Smith and Marren state that they sought to retain attorneys from the law firm of Cotsirilos, Crowley because they believed that the attorneys from that firm were particularly qualified to represent them. Defendants also state that they are fully aware that the firm is representing the other and that this joint representation could result in certain conflicts of interest for their respective attorneys. Smith and Marren further state that they understand that they have a right to be represented by an attorney who is not presently representing a codefendant. In addition, Smith and Marren specifically note their understanding that the Assistant United States Attorney may attempt to negotiate with either or both of them by offering more lenient treatment in return for cooperation and information. They are both aware that such negotiations might result in a deal with the Government which might jeopardize their respective attorney-client relationships. Smith and Marren also understand that if the Government were to make such an offer, it could result in significant conflicts of interest for their attorneys. In the close of their declarations, defendants explicitly waive any possible conflicts that might arise from their joint representation by attorneys from Cotsirilos, Crowley. In support of their proffered waivers, Smith and Marren consent

---

1. Attorneys George Cotsirilos and James Streicker of Cotsirilos, Crowley have filed appearances on behalf of Smith. Attorney Robert Stephenson of the firm has filed an appearance on behalf of Marren.

2. Attorney Thomas Durkin filed an appearance on behalf of Sam Cali and represented Cali at the arraignment before Judge Marovich. Michael Greenfield was originally represented by Harvey Silets and Leigh Roadman of the law firm of Silets and Martin, Ltd., however, on November 13, 1989, these attorneys petitioned the court for leave to withdraw and to substitute Attorney Eugene Kelly, Jr., of Arnstein & Lehr,

as counsel for Greenfield. In support of this petition, Greenfield filed a motion for inquiry into the joint representation pursuant to Fed.R. Crim.P. 44(c).

3. Both Baker and Newberger have retained Attorney Thomas Sullivan of Jenner & Block to represent them. The other attorneys from Jenner & Block who have filed appearances in the case are Jeffrey Coleman, Robert Byman and John Dunbar on behalf of Baker. Attorneys Charles Sklarsky and Robert Byman have filed appearances on behalf of Newberger.

to "any other remedy this court might interpose so as not to delay the scheduled trial of this case as a result of the firm's joint representation."

## 2. Defendants Cali and Greenfield

Under the present indictment, defendants Cali and Greenfield are not coequal defendants with regard to their potential culpability. Cali is charged in a total of 96 counts of the indictment. He is named as a participant in the RICO conspiracy count, as well as in a separate count alleging that he violated RICO by participating in the CME's affairs through a pattern of racketeering. On the basis of this latter count, the Government is seeking forfeiture of any assets Cali earned through this conduct. Of the remaining counts, 56 allege violations of the CME, six counts involve allegations of mail fraud, and 35 counts involve allegations of wire fraud.

Greenfield is charged in a total of 18 counts. He is named as a coconspirator in the RICO conspiracy, but is not charged with individually violating RICO. He is also charged with seven counts of violating the CME, seven counts of mail fraud, and one count of wire fraud. The Government is not seeking forfeiture from Greenfield. Cali and Greenfield are not alleged to have worked together on any of the specified transactions. Nor does the Government allege that either defendant made any inculpatory statements about the other, or that it is presently negotiating with either defendant.

As noted earlier, Cali was already being represented by Thomas Durkin of Arnstein & Lehr when Greenfield's original counsel sought leave to withdraw and Greenfield petitioned the court to grant Kelly leave to substitute as his counsel of record. In their declarations, Cali and Greenfield state that they met with Durkin and Kelly on two separate occasions prior to filing the motion for substitution in order to discuss the potential conflicts of interests involved in their joint representation. Both defendants state that they were advised about their absolute right to be represented by an attorney free from any conflicts of interests, and that their joint representation may give rise to certain conflicts. They state that they were specifically told about their different levels of potential culpability under the indictment and how this could result in a conflict of interest for the firm during any pretrial negotiations with the Government. They were also informed of the conflicts that might arise if either of them were to testify at trial on behalf of the Government. Cali and Greenfield also state that they are aware that their joint representation may affect the strategic decisions their attorneys might make at trial. In their declarations, both defendants conclude by stating that they believe that they have been adequately appraised of the potential conflicts of interest involved. They also seek to "knowingly and intelligently waive any potential conflicts of interest which might arise from the joint representation." Finally, both defendants consent to any remedy this court might interpose so as not to delay the trial because of the joint representation.

## 3. Defendants Baker and Newberger

Under the present indictment, defendants Baker and Newberger are not coequal defendants with regard to their potential culpability. Baker is charged in a total of 48 counts. He is named as a participant in the RICO conspiracy and is also charged with a substantive violation of RICO. On the basis of the latter allegation, the Government is seeking forfeiture from Baker. Of the total charges against Baker, 24 counts allege violations of the CME. Four of these CME counts allege that Baker entered into prearranged accommodation trades for the purpose of creating fictitious trading losses for tax purposes. Of the remaining counts, 11 involve allegations of wire fraud and eight involve allegations of mail fraud. Finally, Baker is charged with two counts of aiding and abetting other traders who violated the CME.

Newberger is named as a coconspirator in the RICO conspiracy count. He is also charged with one count of violating the CME and one count of mail fraud. The Government does not allege that Baker and Newberger worked together on any of

these transactions. Moreover, the record does not reflect that Baker or Newberger have made any inculpatory statements to the Government agents about each other.[4] The Government is not presently pursuing negotiations with either of these defendants.

In their declarations filed before this court, both Baker and Newberger state that they understand that attorneys from Jenner & Block are representing them, as well as a number of other unindicted traders.[5] Both defendants state that they have no knowledge of any wrongdoing on the part of the other. They also point out that they have read the present indictment and understand the potential conflicts associated with their different levels of alleged culpability. They go on to state that they understand that their joint representation by attorneys from Jenner & Block may precipitate certain conflicts of interest. For example, they understand that such conflicts would arise if they were to enter into pretrial plea negotiations with the Government, if either of them were to become a Government witness as a result of such negotiations, or if one or both of them chose to testify at trial. Both defendants state that they "do not view these 'possible' conflicts as 'real' ones." However, to the extent that any such conflicts exist or might otherwise develop, Baker and Newberger seek to waive them so that they may be represented by Attorney Sullivan and Jenner & Block. Baker and Newberger also agree to submit to any further inquiry deemed appropriate by the Court.

In its consolidated response to the declarations, the Government states that it is not aware of any facts demonstrating the existence of any actual conflicts which would render any of the counsel unable to represent their clients. Although the Government expresses its general concern about the joint representation, it "cannot assert that the waivers executed by these defendants are not adequate or should not be accepted."

## II. Analysis

■■■ In this case—indeed, in all criminal cases involving joint representation—the defendants' pretrial declarations and waivers of their rights to conflict-free representation place the court in a difficult position. The initial questions before the court are (1) whether each of the defendants has knowingly and intelligently waived his right to conflict-free representation; (2) whether, in any instance, the attorneys' acceptance of the joint representation has precipitated an actual or serious potential for a conflict of interest, and if so; (3) whether the conflicts are of such a nature as to undermine the defendants' right to effective assistance of counsel, thus overriding the presumption in favor of defendants' choice of counsel. If the court determines that each of these questions is answered in the affirmative with respect to any of the defendants, it must then decide whether to decline those defendants' proffered waivers and to exercise its supervisory powers to disqualify their counsel. *United States v. Dempsey*, 724 F.Supp. 573, 577 (N.D.Ill.1989).

The Seventh Circuit has long held that the appropriate standard for measuring the adequacy of a defendant's waiver of conflict-free representation is whether the waiver is "knowing and intelligent." *United States v. Noble*, 754 F.2d 1324, 1333 (7th Cir.), *cert. denied*, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985); *United States ex rel. Tonaldi v. Elrod*, 716 F.2d 431, 437

---

4. Defendant Baker was interviewed by two FBI agents and two Assistant United States Attorneys prior to being indicted. The court has held a suppression hearing in which it heard testimony regarding the statements allegedly made by Baker during this interview. None of these alleged statements implicates defendant Newberger.

5. It is not clear from the declarations of defendants Baker or Newberger how many unindicted traders are being represented by Jenner & Block. If any of these traders are named in a superseding indictment or if any of them enter into negotiations with the Government, attorneys from Jenner & Block will have to reassess the extent of the possible conflicts that they face. The court is confident that it will be kept abreast of any such developments so that it can fulfill its obligations under Fed.R.Crim.P. 44(c).

(7th Cir.1983). The determination of whether a waiver is knowing and intelligent turns upon "the circumstances surrounding the case, including the background, experience and conduct of the defendant." *Noble,* 754 F.2d at 1333. In the context of defendants' pretrial declarations and proffered waivers, the court must assess whether defendants were adequately informed of the nature of the conflicts that might arise. This is generally not an easy task for either the attorney or the court. As the Supreme Court has noted:

> Unfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interests are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Wheat v. United States,* 486 U.S. 153, 162–63, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988).

The extent to which a defendant must be informed of the potential conflicts of interest and the source of that information are issues that are often raised when waiver decisions like the present one are the subject of a subsequent appeal. *See, e.g., United States v. Alamo,* 872 F.2d 202 (7th Cir.1989); *United States v. Roth,* 860 F.2d 1382 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989); *Noble,* 754 F.2d at 437. Beginning with the latter issue, it is clear that defen-

dants' counsel must be the initial source for the defendants' knowledge. The Code of Professional Responsibility mandates this. For example, DR 5–105(C) is intended both to limit the circumstance in which an attorney can agree to jointly represent clients with differing interests, and to delineate the procedure that must be followed before the attorney may accept such representation. The Rule prohibits an attorney from accepting joint representation of clients with "differing interests" unless "it is obvious that he [or she] can represent the interests of each [client] and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his [or her] independent professional judgment on behalf of each." DR 5–105(C).[6]

■ In the context of a criminal trial involving multiple defendants, the objective "obviousness" of counsel's ability to represent the interests of joint defendants is rarely obvious. *See* Fordham, *There Are Substantial Limitations on Representation of Clients in Litigation Which Are Not Obvious in the Code of Professional Responsibility,* 33 Bus.Law 1193, 1204 (1978) ("it is fair to say that what is and is not obvious within the meaning of DR 5–105(C) is not obvious"). At a minimum, counsel must objectively assess the charges against the defendants, their best defense strategies as perceived at that time,[7] and the likelihood that these strategies will change or engender an actual conflict of interest as the trial unfolds. After making these minimal assessments, counsel must fully explain the matters to the defendants.[8]

---

**6.** The Code defines "differing interests" as "includ[ing] every interest that will adversely affect either the judgment on the loyalty of a lawyer to a client, whether it be conflicting, inconsistent, diverse or other interest." Code of Professional Responsibility, Definitions (1).

**7.** Counsel should carefully consider those strategies that will generally engender an actual conflict of interest such as whether it is in the best interest of either of the defendants to negotiate a plea, to point the finger at a codefendant, and whether to testify at trial. *See generally Dempsey,* 724 F.Supp. at 573.

**8.** The ethical canons to the Code explain this requirement:

> In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given an opportunity to evaluate his [or her] need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he [or she] should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent. If there are

It is probably impossible for counsel to inform a defendant of every conceivable conflict involved in jointly representing a defendant. The circumstances affecting counsel's trial strategies will often change without notice. Such developments are beyond the ken of even the most experienced counsel. Therefore, it is sufficient if a defendant is provided enough information to make an informed choice about the ramifications of his or her selection of counsel. For example, the Seventh Circuit has recently held that an informed choice is one which is based upon "a rational reconciliation of risks and gains that are in the main understood. A choice may be intelligent and voluntary in this sense even though made without potentially important information." *United States v. Roth*, 860 F.2d at 1387.

■ The contents of the defendants' declarations in this case reveal that counsel have complied with the requirements of DR 5–105(C) and that each of the defendant's waivers is knowing and intelligent. Each of the defendants has been told that he has an absolute right to conflict-free representation. Each also knows that rather than waive his rights, he is free to choose another lawyer who is not representing another defendant in the case. Each defendant has stated that he is aware that the potentially different levels of culpability will tend to render his interests adverse to those of his codefendant. Each knows that if the Government were to pursue negotiations with him or his codefendant, it will strain the loyalty of their attorneys. Each understands the conflicts that would arise if he or his codefendant were to strike a deal with the Government. Finally, each knows that if he or his codefendant were to testify at trial and implicate the other, his attorney would be faced with an actual conflict.[9] In short, it is clear that each defendant has

been fully informed of the most probable circumstances in which a conflict of interest is likely to arise.

The court agrees with defense counsel and the Government that the joint representation in each of the three circumstances has not given rise to an actual or serious potential for a conflict of interest. *Wheat*, 486 U.S. at 163, 108 S.Ct. at 1699. In light of the evidence presently before the court, it is persuaded that the presumption favoring defendants' choice of counsel has not been overcome. In fact, the circumstances in this case are very similar to those highlighted by the Seventh Circuit in *United States v. Alamo:*

> No actual recognizable conflicts, real or potential, could be identified, only the usual general conflict possibilities which ordinarily exist. Those general possibilities are not by themselves necessarily enough to deny defendants their desired joint representation. Even the Government could not point to a specific conflict during the pre-trial discussions.

*United States v. Alamo*, 872 F.2d at 206.

■ Because the court concludes that each of the defendant's proffered waivers is knowing and intelligent, it determines that they provide sufficient basis, at this point, for allowing defendants to proceed in preparing their defense through counsel of their choice. That, however, is not the end of the matter. Rule 44(c) requires the court to "personally advise each of the defendants of the right to effective assistance of counsel, including the right to separate representation." Fed.R.Civ.P. 44(c). The Seventh Circuit has repeatedly adhered to the requirements of this rule. *United States v. Colonia*, 870 F.2d 1319, 1327 (7th Cir.1989); *United States v. Roth*, 860 F.2d at 1389 ("A judge should inform the defendant of the nature and importance of the

present any other circumstances that might cause any of the multiple clients to question the undivided loyalty of the lawyer, he [or she] should also advise all of the clients of those circumstances.
EC 5–16.

**9.** Each defendant has also stated that he has read this court's decision in *United States v.*

*Dempsey*, 724 F.Supp. 573, and that he understands the nature of his rights and the potential conflicts involved in joint representation. In *Dempsey*, this court reviewed some of the circumstances in which various conflicts of interest are likely to arise and undermine an attorney's ability to render effective assistance of counsel.

right to conflict-free counsel, and ensure that the defendant understands something of the consequences of the conflict and his entitlement to conflict-free counsel, ...").

Accordingly, before fully accepting the defendants' waivers, the court will take the step of assuring that each defendant understands his rights by appointing special counsel to explain these rights to each, and by holding a hearing for the purpose of advising each defendant of his rights and to further determine that each of the proffered waivers has been knowingly and intelligently made. *See Noble*, 754 F.2d at 1333–35.[10] The court has recently been informed the Government intends to file a superseding indictment that will add counts against certain defendants. Such a development may alter the basis for the court's determination in this order. Therefore, the court will hold the hearing within the meaning of Rule 44(c) after the Government files the superseding indictment or determines that it will not do so.

IT IS THEREFORE ORDERED that the Executive Director of the Federal Defender Program for this district is requested to appoint a panel attorney to review with each defendant his right to conflict-free representation and to inform the court in writing when such advice has been provided within the next 21 days.

IT IS FURTHER ORDERED that defendants' proffered waivers of their right to counsel are conditionally accepted, contingent upon the court's findings after conducting a hearing within the meaning of Fed.R.Crim.P. 44(c).

---

**10.** This step is not meant to suggest that defense counsel have not adequately informed their clients of the potential conflicts involved. The procedure allows each defendant to discuss the conflicts issue in detail with a disinterested officer of the court who will have no further involvement in the case. The procedure is also intended to avoid an extended colloquy with each defendant about his case, his relationship with codefendants, and his relationship with his lawyer in open court at the pretrial stage of the case.