RUSSELL G. VINEYARD, UNITED STATES MAGISTRATE JUDGE
*1328 Defendants Fredrico Pacheco-Romero ("Pacheco-Romero"), Carlos Martinez, Eduardo Lopez, Victor Manuel Sanchez, Jorge Mendoza-Perez, and Santana Cardenas, collectively referred to as "defendants," are charged with conspiring to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. [Doc. 41].[1] Attorneys Jerome D. Lee ("Lee") and S. Eli Bennett ("Bennett")[2] of the law firm Taylor, Lee & Associates, LLC, have represented all six defendants since the commencement of the case upon the filing of a criminal complaint. See [Docs. 1, 2, 5, 8, 11, 14, 17, 38, & 60].[3] After Lee and Bennett appeared as counsel for the defendants at arraignment, [Docs. 64-69], the Court scheduled a hearing pursuant to Rule 44(c) of the Federal Rules of Criminal Procedure to inquire about the propriety of the joint representation of the defendants, [Doc. 74], and the government subsequently filed a motion to disqualify counsel, [Doc. 70]. Following the hearing on March 14, 2019, [Doc. 72], Lee and Bennett filed a response to the government's motion to disqualify, [Doc. 73], and the government has filed a reply in support of its motion, [Doc. 75]. For the reasons that follow, the government's motion to disqualify Lee and Bennett, [Doc. 70], is GRANTED .
Rule 44(c)(2) of the Federal Rules of Criminal Procedure requires the Court to "promptly inquire about the propriety of joint representation," and to "personally advise each defendant of the right to effective assistance of counsel, including separate representation." Fed. R. Crim. P. 44(c)(2). "Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel."Id." 'Appropriate measures' include requiring 'that an attorney who represents two co-defendants cease his representation of either or both of them.' " United States v. Garner, Criminal No. 12-cr-65-JMH, 2013 WL 99396, at *2 (E.D. Ky. Jan. 7, 2013) (quoting United States v. May, 493 F.Supp.2d 942, 944 (S.D. Ohio 2004) ).
The Court conducted the inquiry required by Rule 44(c) on March 14, 2019, including an ex parte conference with counsel and defendants to explore the propriety of joint representation of all six defendants in this case. [Doc. 72]. Each defendant was informed of his right to separate representation by counsel of his choice and the opportunity to retain another attorney or to have court appointed counsel if he could not afford to hire his own attorney. [Id. ]. After the Court discussed with the defendants various examples of conflicts of interest that could occur with joint representation, each defendant affirmed in open court and by executing a written waiver that he wanted to continue *1329 to be represented by Lee and Bennett and their firm. See [Doc. 73-1 at 4-21].
Although a defendant has a presumptive right to be represented by the attorney of his choice, "this right is not absolute, but is qualified by the judiciary's 'independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards.' " United States v. Henry, 307 F. App'x 331, 334 (11th Cir. 2009) (per curiam) (unpublished) (quoting United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994) ). Thus, counsel may be disqualified from representing a defendant where an actual, or even potential, conflict of interest is present. Id. (citations omitted); see also Wheat v. United States, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ("[A] showing of a serious potential for conflict" overcomes presumption in favor of defendant's counsel of choice.).
The Court cannot find that there is good cause to believe that no conflict of interest is likely to arise from the joint representation in this case and concludes that disqualification of Lee and Bennett and their firm as counsel for all defendants is required because there is a serious potential, if not actual, conflict of interest in their joint representation of all six defendants, who are charged in a drug trafficking conspiracy. The criminal complaint in this case describes the differing roles the defendants allegedly played in the drug trafficking conspiracy, [Doc. 1], which creates a significant potential conflict of interest from joint representation because each defendant does not stand on equal footing with respect to their potential culpability and opportunity to negotiate a resolution of the pending charges against them. For example, as commonly occurs in conspiracy cases, the government may be willing to offer a favorable plea deal to one or more defendants in return for their cooperation and testimony against co-defendants, and Lee and Bennett could not fulfill their duty to effectively represent all of the defendants by advising one defendant to take a plea deal that would be detrimental to their other clients. United States v. Dempsey, 724 F.Supp. 573, 578 (N.D. Ill. 1989) (citation omitted) ("When one attorney represents multiple defendants, however, plea bargain negotiations are fraught with danger of conflicts of interests.").
Lee and Bennett suggest that there is a tactical advantage to joint representation during the pretrial portion of the case so that defendants may more effectively challenge the search warrants used during the investigation, see [Doc. 72; Doc. 73 at 7-9], but the very decision of whether to file pretrial motions or pursue a potential plea agreement has very real consequences in this district as the United States Attorney's office regularly reserves the most favorable plea terms for those defendants who do not file pretrial motions. Thus, even the pretrial strategy being jointly pursued by these six defendants presents a strong potential conflict of interest given their different alleged roles and levels of exposure and corresponding potential opportunities to negotiate a favorable plea agreement.[4] The joint representation of individuals *1330 with differing alleged participation in the charged conspiracy "could force defense counsel to forego certain strategic options that might otherwise be pursued if defendants were separately represented." Dempsey, 724 F.Supp. at 578 (footnote omitted).
If the defendants choose to go to trial, a serious potential conflict of interest remains with joint representation. Should any defendant elect to testify in his own defense, his testimony could prove to be harmful to the other defendants, and Lee and Bennett "would be faced with the prospect of examining or cross-examining a witness whom he represents and whose interest lies in direct conflict with his other client." Garner, 2013 WL 99396, at *2. Lee and Bennett, who are associated in law practice, have represented all of the defendants since the case initiated with the filing of a criminal complaint, and because there is an irrebuttable presumption that they received confidential communications from the defendants during the course of that representation, see Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999) (citation omitted), Lee and Bennett have "divided loyalties that prevent [them] from effectively representing the defendant[s]," Ross, 33 F.3d at 1523 (citation omitted). As the Eleventh Circuit explained:
If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate. Indeed, it is also true that disqualification is equally appropriate if the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest. In short, the court must protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards.
Id.
Lee and Bennett emphasize in their response that the scope of their representation is limited to the pretrial portion of the case and "once the current benefits of concurrent representation are exhausted through the pretrial process, [the defendants] will revisit the issue at that time." [Doc. 73 at 11]. The notice of appearance Bennett filed on behalf of Pacheco-Romero does not include such a limitation in representation, [Doc. 38], nor does the docket reflect entry of a limited appearance upon arraignment of the defendants, see [Docs. 64-69], and generally, such limited appearances are not permitted in this Court.[5] Moreover, as the government points out, [Doc. 75 at 3 n.2], the prospect of new counsel appearing for each of the defendants after pretrial motions have been litigated could result in delay of the trial of this case, contrary to the Local Rules, which provide that "[c]ounsel will not ordinarily be allowed to withdraw after pretrial or at a time when withdrawal will cause a delay in the trial of the case," LCrR 57.1E(1), NDGa. Indeed, the Supreme Court recognized in Wheat that trial courts need not wait for an actual conflict to emerge before disqualifying counsel because "[n]ot only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." 486 U.S. at 160, 108 S.Ct. 1692.
The Court is mindful that a defendant may waive conflict-free representation, *1331 but courts are not bound to accept the waiver. See Ross, 33 F.3d at 1524 (citation omitted). In Wheat, the Supreme Court recognized that "in the murkier pre-trial context when relationships between parties are seen through a glass, darkly[,] [t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." 486 U.S. at 162-63, 108 S.Ct. 1692. Thus, "court[s] must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163, 108 S.Ct. 1692.
The full range of potential conflicts of interest can be difficult to assess at this early stage in this case, but the foregoing discussion demonstrates that there are very obvious potential, if not actual, conflicts already present, and the Court need not wait until these conflicts become even more certain to disqualify counsel from further representation of all defendants, despite the waivers executed by the defendants. Thus, the waiver option has been considered, but rejected, in order "to ensure the adequacy of representation, to protect the integrity of the court, and to avoid future attacks over adequacy of waiver and fairness of trial." United States v. Harris, No. 4:07-CR-59 (CDL), 2008 WL 360626, at *3 (M.D. Ga. Feb. 8, 2008) (citation omitted).[6]
For the reasons stated, Lee, Bennett, and their firm are disqualified from representing any of the defendants in this case,[7] and the Court will afford the defendants 14 days from the entry of this Order to retain new counsel of their choice or to request appointment of counsel if they qualify.[8]
*1332 IT IS SO ORDERED , this 22nd day of March, 2019.

The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

Bennett's name is listed on the docket as "Stephen Elijah Brown-Bennett," but he uses the name "S. Eli Bennett" in court and on pleadings. See [Doc. 38].

On February 15, 2019, Allison Dawson of the Federal Defender Program was appointed to represent Pacheco-Romero for his initial appearance only, [Docs. 20 & 21], and he was granted time to retain counsel of his choice, [Doc. 22]. On February 21, 2019, Bennett filed a notice of appearance on behalf of Pacheco-Romero. [Doc. 38].

The criminal complaint indicates that law enforcement agents executed search warrants at six different locations that were associated with different defendants or their relatives, [Doc. 1 at 17-18 ¶ 33], and the amount and type of evidence recovered during the searches varied at each location, [id. at 18-21 ¶¶ 34-40], which again underscores the potential conflict of interest arising from the relative culpability and risk of conviction among these six defendants that must be considered in evaluating whether to challenge a particular search by establishing a reasonable expectation of privacy in the location searched. Considering the different circumstances under which defendants were encountered during the searches as described in the criminal complaint, [id. ], the common strategy being pursued begs the question whether the interests of each individual defendant are being adequately protected by the joint representation. Dempsey, 724 F.Supp. at 578.

The Court also has reviewed the letters of engagement for each defendant counsel has submitted under seal and does not see such a limitation in representation.

As the government points out, [Doc. 75 at 4-5], the waivers signed by the defendants include the statements that the defendants "believe that [their] lawyers are in a unique position to raise certain legal issues pertaining to the investigation and prosecution of [their] case," and "that joint representation will allow [them] to avail [themselves] of certain strategies and defenses that would be unavailable to [them] if [they] were represented separately from [their] co-defendants by a public defender, private retained counsel, or private appointed counsel, [Doc. 73-1 at 4-5, 7-8, 10-11, 13-14, 16-17, 19-20]. Lee and Bennett attempted to explain these statements during the ex parte portion of the Rule 44(c) hearing, but the Court is not persuaded that there is any unique or otherwise unavailable tactical advantage to the defendants being jointly represented by Lee and Bennett. Moreover, given that some of the defendants have a limited education and no prior experience with the United States criminal justice system, their waivers are suspect to the extent they relied on these dubious representations when electing to execute the waiver. Wheat, 486 U.S. at 163, 108 S.Ct. 1692 (recognizing that potential conflicts of interest are "even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.").

The Court has considered whether Lee and Bennett could continue to represent one of the defendants in this case, but concludes that a serious potential conflict of interest would remain based on their representation of all six of the defendants with whom they have discussed the case in concluding to pursue a common defense strategy. Moreover, other potential conflicts arising from their representation of additional individuals were apparent based on the ex parte portion of the hearing, which further persuades the Court that Lee, Bennett, and their firm must be disqualified from representing any of the defendants in this case. See Ross, 33 F.3d at 1523.

Counsel have not submitted the information regarding the payment of their fees that the Court inquired about at the hearing, despite follow-up requests by the undersigned's Courtroom Deputy Clerk. See United States v. Padilla-Martinez, 762 F.2d 942, 949 (11th Cir. 1985). The Court will pursue this matter and whether any portion of the fees paid should be refunded separately from this order.