**UNITED STATES of America,
Plaintiff,**

v.

**Mark MAY, et al., Defendant.**

**No. CR–3–03–094.**

United States District Court,
S.D. Ohio,
Western Division.

Feb. 25, 2004.

Gregory Von Schaumburg, Richard J. Gorman, Securities and Exchange Commission, Midwest Regional Office, Chicago, IL, J. Richard Chema, Assistant United States Attorney, Dayton, OH, for Plaintiff.

DECISION AND ENTRY FINDING ACTUAL AND POTENTIAL CONFLICTS OF INTEREST IN CONTINUED DUAL REPRESENTATION, ORDERING EACH DEFENDANT TO OBTAIN NEW COUNSEL AND OVERRULING ATTORNEY PHILLIP D. LEHMKUHL'S MOTION FOR LEAVE TO WITHDRAW AS COUNSEL OF RECORD FOR MARK MAY (DOC. # 27) AS MOOT; DIRECTIVE TO DEFENDANTS; ENTRY OF CONTINUANCE.

RICE, District Judge.

The Government brought an eleven-count indictment against Mark May and Craig Herl, collectively, on July 22, 2003. The indictment includes six counts of perjury under 18 U.S.C. 1621 against Defendant May, four counts of perjury under the same statute against Defendant Herl, and one common count against both defendants for obstruction of justice under 18 U.S.C. 1503. The indictment arises out of statements made under oath by both Defendants in the course of a civil securities fraud proceeding initiated against them by the Securities and Exchange Commission ("SEC") and in the course of a criminal contempt proceeding arising out of Defendants' alleged violation of the court's preliminary injunction order in that civil proceeding (Doc. # 1). Both Defendants are represented by Phillip D. Lehmkuhl. Pursuant to Federal Rule of criminal Procedure 44(c), this court held a hearing on October 27, 2003 ("the Rule 44(c) Hearing"), regarding the issue of Mr. Lehmkuhl's dual representation of Defendants in this matter. Further, in the interim between the Rule 44(c) Hearing and the Court's resolution of the dual representation issue herein, Mr. Lehmkuhl filed Motion for Leave to Withdraw as Counsel of Record for Mark May (Doc. # 27). For the reasons stated herein, this court finds that Mr. Lehmkuhl's representation of both defendants is improper and, moreover, that Mr. Lehmkulh must cease representation of *both* defendants. To that end, the Motion for Leave to Withdraw as Counsel of Record for Mark May, alone, is overruled as moot.

## I. Background

On October 15, 1998, the SEC sued Defendants, alleging, *inter alia,* that they had engaged in securities fraud in the offer and sale of securities of USA Financial Network, Inc., and other related companies, including S–Corp Financial, Inc., Bancorp Mortgage, Inc., Biltmore Development Corporation and Network Finance, Inc. (Doc. # 1 at 1–2 (unnumbered), *citing United States Securities and Exchange Commission v. Mark May, Craig A. Herl, et al.,* C–3–98–468). On January 29, 1999, Defendant Herl testified during the SEC's request for a Preliminary Injunction and on February 3, 1999, this court entered such an order against Defendants (*Id.* at 3 (unnumbered)). Subsequently, on December 15, 2000, Defendants were charged with criminal contempt for violations of this court's Preliminary Injunction Order (*Id.*). A trial occurred thereafter, at which

both defendants testified (*Id.*). Mr. Lehmkuhl represented both Defendants in that case, which is still pending a decision in this court. Finally, Mr. Lehmkuhl represented Defendant May in another criminal proceeding, in which Defendant May was found guilty by a jury on September 26, 2003 of two counts of tax evasion and four counts of willful failure to account for and pay over payroll taxes. *See United States v. May,* CR–3–02–cr–00032.[1] Defendant Herl testified at that trial, but was represented by separate counsel, appointed to advise him prior to the commencement of that testimony.

## II. Analysis

■ Federal Rule of Criminal Procedure 44(c) directs District Courts to "promptly inquire about the propriety of joint representation." The rule further states that "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Since "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), and since a defendant's Sixth Amendment right to choose his own counsel "is circumscribed in several important respects," *id.* at 159, 108 S.Ct. 1692, the "appropriate measures" that must, pursuant to Rule 44(c), be taken by a District Court may include requiring that an attorney who represents two co-defendants cease his representation of either or both of them. Thus, though a defendant may waive conflicts of interest and elect to continue with dual representa-

tion, such a waiver does not bind the courts. *United States v. Hall,* 200 F.3d 962, 965 (6th Cir.2000).

In the present case, the Government argues that Mr. Lehmkuhl's representation of both Defendants poses both potential and actual conflicts of interest. The Court will address the alleged actual conflicts of interest, followed by the alleged potential conflicts of interest.

## A. Actual Conflict

■ The Sixth Circuit has set out the standard for determining whether an actual conflict exists:

> "[Proof of] actual conflict [requires] 'specific instances in the record to suggest an actual conflict or impairment of [defendants'] interests.' [To show that an actual conflict exists, it is necessary to] demonstrate that the attorney 'made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.' . . . There is no violation where the conflict is 'irrelevant or merely hypothetical'; there must be an 'actual significant conflict.'"

*Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir.1987), *quoting United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.) (citations omitted). Obviously, the Sixth Circuit's delineation of that standard is based on a posture of review of the record at the trial court level, rather than from the perspective of prevention, which is the purpose of the Rule 44(c) evaluation at the District Court level. Even so, the course of Mr. Lehmkuhl's dealings with Defendants already suggests elements of actual conflict. Specifically, as the Government points out,

---

1. Defendant May has been sentenced, and new counsel will be appointed to represent     him on appeal.

Mr. Lehmkuhl has decided to forego any plea bargaining negotiations. According to the Government, Mr. Lehmkuhl has declined, for example, to inquire about things such as

> preliminary [sentencing] guideline calculations for each defendant[,] terms of any plea arrangement[,] whether terms in connection with any plea arrangement might be more favorable for one defendant th[a]n another, whether the Government would consider a "global" plea which would resolve the pending criminal contempt case as well as the present case or whether the Government was considering the possibility of moving for an upward departure at sentencing in the event of convictions in the present case, the criminal contempt case and, regarding Defendant May, the criminal tax case.

Doc. # 18 at 3. The Government adds that it was willing to consider such a "global" plea arrangement for Defendant May, if he had agreed to cooperate against Defendant Herl (*Id.* at 3–4). In a decision following *Foltz, supra,* the Sixth Circuit indicated that "[f]oregoing plea negotiations [in a dual representation case] is proof of an actual conflict of interest." *Hall,* 200 F.3d at 966, *citing Foltz,* 818 F.2d at 481–82 (reversing conviction of one of two co-defendants where proof of defense counsel's actual conflict of interest existed). The rationale for this is that, but for his representation of the other co-defendant, an attorney may very well be able to negotiate a plea bargain (and thus a more favorable sentence) on his client's behalf in exchange for becoming a prosecution witness against the co-defendant. *Foltz,* 818 F.2d at 481, *quoting Baty v. Balkcom,* 661 F.2d 391, 397 (5th Cir. Unit B Nov.1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982). Further, as will

be discussed, *infra,* the possibility of one defendant's testifying against the other poses its own potential conflict of interest for Mr. Lehmkuhl.[2] Finally, a closely related subset of this is the risk that Mr. Lehmkuhl has not counseled either Defendant on a plea for the very reason that such a discussion would likely entail prejudicing the other defendant. This is a concern that will likely not go away—in fact, it may intensify—as the proceedings progress. Both Defendants may now be unified in their determination to remain loyal to each other, *see .infra,* but it would be improper to accept on faith the proposition that such will never diminish. If, hypothetically, the Government were to propose a plea arrangement to Mr. Lehmkuhl, he may very well find it difficult to convey, in honest and accurate fashion, the benefits of a plea to one of his clients, given the presumed cost to the other.

Defendants have three responses. *First,* they insist that in making this argument, the government is trying to "manufacture" a conflict of interest (Doc. # 23 at 11). They believe that the Government is "contriv[ing] to shoot Attorney Lehmkuhl out of the saddle" (*Id.* at 12), presumably so that Defendants will be forced to hire a different attorney, with less familiarity with Defendants and their case. The Government responds that its motivation for advancing this argument is simply to provide the court with facts and legal precedents sufficient to undertake its duty pursuant to Rule 44(c) (Doc. # 24 at 3–5 (unnumbered)). Whether or not it is true that the Government also would prefer, for strategic reasons, that Mr. Lehmkuhl not remain on the case, there is no support for the claim that it has "manufactured" a conflict. To be sure, the government has not manufactured any of the

---

2. To be sure, in the event that one Defendant were to testify against the other, Mr. Lehmkuhl could not, consistent with rules of ethical conduct, cross-examine his former client.

underlying facts, and a number of objective factors point to the presence of a conflict of interest.

*Second,* Defendants argue that it is illogical for a defendant who believes in his own innocence to entertain a guilty plea in exchange for avoiding a risk of worse consequences (Doc. # 23 at 11). However, coming from a perspective that is equally neutral to Defendants' actual guilt or innocence, it may be similarly illogical for a defendant not to entertain the possibility of hedging his bets by engaging in a plea negotiation. To be sure, this must have been the premise of the Sixth Circuit's contention that foregoing plea negotiations constitutes proof of an actual conflict of interest.

*Third,* Defendants argue that they possess a superior moral code that precludes them from being disloyal to a friend by testifying against him (*Id.* at 11–12). Yet, as Defendants themselves acknowledge (*Id.* at 11), this norm is in tension with another norm, enshrined in the Model Rules of Professional Responsibility,[3] that attorneys must act with the utmost loyalty to their client's interests. This includes, in a criminal context, exploring all avenues of negotiation with the Government that may be beneficial to the client.

Further, the above three responses notwithstanding, Mr. Lehmkuhl appears to have conceded, at least in part, the validity of the Government's concern. Specifically, in his Motion for Leave to Withdraw as Counsel of Record for Mark May, Mr. Lehmkuhl acknowledges that he cannot recommend to Defendant May the pursuit of a plea bargain while still representing Defendant Herl (Doc. # 27 at 3). Although Mr. Lehmkuhl believes that this dilemma may be rectified by the cessation of his representation of Defendant May only (whereby he would continue to represent Defendant Herl), for reasons explained *infra,* the Court disagrees.

The Government's other argument for actual conflict is more attenuated. It pertains to the operation of Premier Services Network (f.k.a. ChoiceCare Select Associates), of which Defendants are representatives and which is in the business of estate planning (Doc. # 18 at 4). Specifically, the Government points to the fact that of the $1995 that customers of Premier Services pay for estate planning services, $500 is paid to an attorney for legal services. According to the Government, Premier Services holds out Mr. Lehmkuhl to prospective clients for legal services (*Id.* at 5). From there, the Government reasons that "if Defendant May controlled the flow of fees from Premier Services Network, Mr. Lehmkuhl might be consciously or unconsciously beholden to Defendant May to the disadvantage of Defendant Herl. The reverse would also be true" (*Id.* at 5–6). Defendants respond that this logically implies that no instance of dual representation would be without conflict, save for the "mythical situation" where the income earned from each client is exactly equal (Doc. # 23 at 10–11, noting that the Government's argument assumes that all attorneys "have a monetary incentive to sacrifice upon the altar of unbridled greed that client which offered the lower fee potential"). The court need not subscribe to Defendants' doomsday hypothesis in order to reject the Government's argument. Instead, the court merely notes that the possibility that this conflict exists only at an "unconsciou[s]" level in Mr. Lehmkuhl does not sufficiently bring it from the realm of hypothetical to the realm of the actual and documentable.

Nonetheless, Mr. Lehmkuhl's foregoing of plea negotiations altogether is compelling, and, as he has all but admitted (Doc. # 27 at 3), constitutes an actual conflict of

---

**3.** *See generally,* MODEL RULES OF PROF'L CONDUCT R. 1.

interest because an attorney must pursue plea negotiations for his client. *See Foltz,* 818 F.2d at 481–82 and *Hall,* 200 F.3d at 966 ("Forgoing plea negotiations [in a dual representation case] is proof of an actual conflict of interest.").

### B. Potential Conflict

■ There is also a potential conflict of interest here. Though this potential conflict could manifest itself in a number of specific ways, it can be said broadly that joint representation of Defendants may limit or restrict Mr. Lehmkuhl from pursuing legitimate tactics ordinarily pursued by a criminal defense attorney. As the Supreme Court has noted,

> "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another."

*Wheat,* 486 U.S. at 160, 108 S.Ct. 1692, *quoting Holloway v. Arkansas,* 435 U.S. 475, 489–90, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). *See also Foltz,* 818 F.2d at 481–82; *Hall,* 200 F.3d at 966. The latter potentiality is present here. Although experience tends to show that one co-defendant is almost always more culpable than the other (or, at the very least, that defense attorneys almost always adopt as sound strategy the practice of arguing for such disparate culpability), as the Government

points out, Mr. Lehmkuhl has already failed to differentiate between the actions of Defendant May and Defendant Herl at the criminal contempt trial, and continues to fail to do so now (Doc. # 18 at 9). Specifically, the Government points out that Mr. Lehmkuhl persists in his unified defense of Defendants, despite having been informed by the Government that "Defendant May's convictions in both the criminal contempt and the criminal tax fraud [trials] could significantly and adversely [a]ffect his sentence in those matters and, therefore, arguably give him an incentive to plead guilty and cooperate against Defendant Herl" in this matter (*Id.*).[4] This, in conjunction with Mr. Lehmkuhl's disinclination even to entertain the possibility of a plea bargain for *either* client, *see supra,* raises substantial concerns about Mr. Lehmkuhl's ability to properly represent both defendants.

The flip-side of this concern would apply in the event that one defendant did, in fact, decide to enter into a plea arrangement and testify for the Government against the other. As Mr. Lehmkuhl recognized in his Motion for Leave to Withdraw as Counsel of Record for Mark May (Doc. # 27 at 4), it would then be necessary for him to withdraw from representation of the defendant who accepted the plea bargain at that time. It would be unavoidable that Mr. Lehmkuhl would be in the precarious situation of having to cross-examine his former client. Such cross-examination would necessarily entail information that Mr. Lehmkuhl learned from the witness at a time when he was representing him.[5]

Defendants' general response to this is that the accusation of perjury is not ame-

---

4. Of course, at this time, Defendant May has already been sentenced in the criminal tax fraud matter. *See U.S. v. May,* C–02–C–032, Doc. # 77 (sentencing May to 72 months incarceration).

5. Furthermore, as noted *infra,* the possibility that one co-defendant could reach such a plea bargain *after* jeopardy attaches as to the other co-defendant presents a further problem not apparently ameliorated by Mr. Lehmkuhl's promise to withdraw as counsel.

nable to the division of culpability among the defendants. Instead, they argue, "Perjury is [a] uniquely personal crime, always committed (or not) by one person at one precise moment in time. Perjury always involves one person's memory, one person's knowledge, and one person's understanding of the question posed to him" (Doc. # 23 at 5). As a consequence, according to Defendants, "a Defendant cannot establish his innocence to the charge of Perjury by blaming another for a falsehood the Defendant intentionally uttered" (*Id.*). Although, intellectually, this argument has some surface-level appeal, Defendants fail to appreciate that there exists a factual predicate, a context, to the charge of perjury (and to the charge of any other crime, for that matter). In this case, the charges of perjury arise from a unified course of transactions and occurrences in which the SEC has already obtained a Preliminary Injunction against Defendants for securities fraud and for which the Government has already sought convictions for contempt of that civil judgment. The Government argues that "it will prove that their perjury and obstruction were related to the Defendants' mutual efforts to obstruct the SEC investigation" (Doc. # 24 at 6 (unnumbered)). Given that these alleged efforts of obstruction were mutual, it is uncertain whether a cogent defense to the charges would entail strictly a reference to the individual Defendant's personal perceptions. Instead, the mutual, joint nature of the alleged offenses suggests that a zealous, effective defense of one Defendant may entail arguing that the conduct of the other substantially influenced and/or accounted for that Defendant's alleged perjury and obstruction. At the very least, the identity of each Defendant's counsel should not foreclose such a defense strategy. Yet, such foreclosure would be exactly the consequence of per-

mitting the dual representation to continue.

As a concrete example, the Government insists that competing interests exist as to the culpability of one Defendant, vis-a-vis the other, in that it intends to prove that Defendants "lied and obstructed in order to hide Defendant May's role in the USA Financial companies (and other companies) in order to avoid liabilities to former clients and the Internal Revenue Service arising from May's ownership of Maranatha Financial" (*Id.* at 6–7 (unnumbered)). In a nutshell, Defendants improperly conceive the charges of perjury and obstruction as existing within a vacuum, devoid of factual context. As with any crime, this is simply not the case; there is always a factual predicate, which, here, includes Defendants' mutual business endeavors that gave rise to the underlying SEC actions.

Finally, Defendants' arguments regarding the Government's alleged ulterior motives in advancing its arguments and regarding their superior moral code, *see supra*, presumably apply to the potential conflict of interest as well. Yet, for the same reasons that those arguments were rejected with respect to the actual conflict of interest, they are rejected here. To be sure, there is no support for the claim that the Government has manufactured anything here, and Defendants' superior moral code, while admirable, does not defeat arguments premised on the possibility that things may change in the future.

For the above reasons, Mr. Lehmkuhl's representation of both defendants also poses an impermissible potential conflict of interest.

## C. Remedy

■ Given that Mr. Lehmkuhl's representation of Defendants May and Herl constitutes an actual, as well as a potential, conflict of interest, it is the finding of this

Court that he may not continue in his dual representation in this matter. As stated *supra*, the conflict of interest here is premised, in part, on the possibility that Mr. Lehmkuhl would be forced to cross-examine a former client. Since no one can predict which current client would be the witness in this hypothetical cross-examination, it is the judgment of the court that Mr. Lehmkuhl must cease his representation of *both* defendants, who must now each find alternate counsel.

Nonetheless, Mr. Lehmkuhl urges the Court to permit his continued representation of Defendant Herl, as long as he ceases his representation of Defendant May (Doc. # 27). In the event that Defendant May, represented by new counsel, agrees to testify against Defendant Herl, Mr. Lehmkuhl assures that he would withdraw his representation of Defendant Herl, as well (*Id.* at 4). Yet, the ethical dilemma raised by the potentiality of Mr. Lehmkuhl's cross-examination of his would-be former client is not the only problem associated with the dual representation. Other problems exist that are not readily ameliorated by Mr. Lehmkuhl's withdrawal from representation of only one of the two defendants. *First,* as the Government suggests, Mr. Lehmkuhl would still have a duty to Defendant May, even after the conclusion of his representation of that Defendant, and even after the severance of Defendants' trials, if Defendant Herl's Motion for Severance (Doc. # 28) is sustained, that could prevent him from effectively representing Defendant Herl (Doc. # 29 at 6). As noted *supra*, a tell-tale sign of a potential conflict of inter-est is the failure of counsel to attempt to differentiate the culpability of various co-defendants. Due to ongoing ethical obligations, Mr. Lehmkuhl's strategic options may very well remain constrained with respect to Defendant Herl, even following his withdrawal from representation of Defendant May. For instance, to the extent that Defendant Herl's best defense might be antagonistic to Defendant May's defense, Mr. Lehmkuhl could be precluded from exploring certain paths and making certain arguments, insofar as doing so could jeopardize the confidentiality of information that he learned from Defendant May during the course of their attorney/client relationship. Indeed, without any intent to impugn the sincerity of Mr. Lehmkuhl's argument regarding the intensely personal nature of the accusation of perjury, the fact that he, on behalf of his client, Craig Herl, has moved the Court to sever the trials of the defendants, suggests that, as the Government notes (*Id.* at 7), the co-defendants' interests are in conflict. As such, Mr. Lehmkuhl's implicit request to remain as the counsel of record for Defendant Herl must be denied.

*Second,* if trial of both Defendants proceeds, there is the hypothetical risk that, at some point after jeopardy has attached, Defendant May would decide to enter a plea and testify against Defendant Herl. In this event, Mr. Lehmkuhl would face no option other than withdrawal from representation because of the obvious conflict of interest.[6] However, in that Herl would be forced to obtain new counsel in midstream of the trial, he may very well be prejudiced.[7]

---

**6.** To be sure, Mr. Lehmkuhl, himself, has already promised to withdraw from representation of Defendant Herl in the event that Defendant May opts to testify against Herl, *supra*.

**7.** In the event that the Court sustains Defendant Herl's Motion to Sever the trials (Doc.

# 28), the Government requests that the trial of Defendant May proceed first (Doc. # 29 at 8). Admittedly, that ordering of the trials would alleviate the hypothetical problem posed above, but this, without more, cannot justify sustaining the Motion to Sever.

Therefore, each Defendant must retain new counsel and advise the Court of the identity of same (or their inability to obtain such successor counsel) within thirty days. Accordingly, the trial set for February 17, 2004, is continued and a new scheduling conference, leading to the setting of a new trial date and other dates leading to the resolution of this indictment will be scheduled when successor counsel has entered an appearance. The Court finds that, based upon the above, the ends of justice outweigh the interests of the Defendants and the public in a speedy trial. 18 U.S.C. § 3161(h)(8).